### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Doe (S.S.), | : |
| | :   **Case No. 2:24-cv-01780-ALM-EPD** |
| **Plaintiff,** | : |
| | :   **JUDGE ALGENON L. MARBLEY** |
| **v.** | : |
| | :   **Magistrate Judge Elizabeth P. Deavers** |
| RED ROOF INNS, et al. | : |
| | : |
| | : |
| | : |
| **Defendants.** | : |

### OPINION & ORDER

This matter comes before this Court on Defendants RRF Holding Company, LLC ("RRF Holding"); RRI West Management, LLC ("RRI West"); Red Roof Franchising, LLC ("RRF"); and Red Roof Inns, Inc.'s ("RRI") Motions for Judgment on the Pleadings. (ECF Nos. 23, 24, 25, 26). For the reasons stated below, the motions are **GRANTED IN PART** to the extent that RRI Brand Defendants seek dismissal of Plaintiff's perpetrator claims, and Plaintiff's perpetrator liability claim against RRI Brand Defendants is therefore **DISMISSED**. RRI Brand Defendants' motions (ECF Nos. 23, 24, 25, 26) are **DENIED** in all other respects.

### I.     BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Plaintiff S.S. alleges that, from March through April 2017, she was unlawfully and repeatedly sex trafficked at a Red Roof Inn located at 2200 Corporate Plaza, Smyrna, Georgia 30080 ("Smyrna RRI"). (ECF No. 1 ¶ 24). During this time, Plaintiff alleges that she "had visible bruises"; "showed obvious signs of fear and anxiety"; was "kept in a drugged state by her traffickers" and "frequently yelled at by her trafficker in a way that could be heard by customers and staff"; and "exhibited obvious signs of disorientation and impairment." (*Id.* ¶ 78).

In April 2024, Plaintiff sued the franchisors, managers, and operators of the Smyrna RRI ("**RRI Brand Defendants**");[1] and its owner and operator, Varahi Hotel, LLC ("**Varahi**" or "**Franchisee**"), seeking damages under the TVPRA's civil liability provision. 18 U.S.C. 1595(a). Plaintiff contends that "RRI Brand Defendants, together with Varahi . . . acted as the joint employer of [Smyrna RRI] employees because RRI Brand Defendants and Varahi . . . jointly controlled the terms and conditions of their employment." (*Id.* ¶ 107; *see also id.* ¶ 28 ("At relevant times, [Franchisee] owned, operated, and managed the subject Red Roof Inn and employed the staff at the Red Roof Inn through the franchising system of the RRI Brand Defendants.")). She also contends that "RRI [Brand] Defendants signed agreements with one another related to the subject hotels" and "exercised joint control over operations of the subject hotels . . . ." (*Id.* ¶ 107).

According to Plaintiff, RRI Brand Defendants exercised "systemic and pervasive control over [Franchisee's] day-to-day operation" through inspections; compliance monitoring; requiring that franchisees use centralized reservation, marketing, and credit process systems; dictating policies related to forms of payment; setting prices and wages; making or influencing employment decisions; and requiring franchisees to collect guest data through RRI Brand Defendants' systems, compile reports, and provide that data to RRI Brand Defendants. (*See id.* ¶¶ 100, 103). Given the degree of control and supervision that RRI Brand Defendants maintained over the Smyrna RRI, Plaintiff asserts that they knew or should have known about Plaintiff's trafficking based on "obvious and apparent signs" exhibited through Plaintiff's interactions with the front desk staff

---

[1] "**RRI Brand Defendants**" include Red Roof Inns, Inc. ("RRI"); RRF Holding Company, LLC ("RRF Holding"); Red Roof Franchising, LLC ("RRF"); and RRI West Management ("RRI West") which, according to Plaintiff, operated, controlled, and managed the Smyrna RRI. (ECF No. 1 ¶ 26). Describing the relationship between these entities, Plaintiff alleges that RRI and RRI West share a common parent company (*id.* ¶ 15); RRI is the parent company of RRF Holding (*id.* ¶ 13); and RRI, RRI West, and RRF are corporate affiliates. (*Id.* ¶ 15).

(*id.* ¶ 77); incidents in the common areas of the hotel (*id.* ¶ 78); and the status of her room (*id.* ¶ 80).

As an example, Plaintiff notes that she was never asked for identification at check-in; that the rooms would be paid for by her trafficker with cash or prepaid cards; and that her traffickers would check in with little or no luggage. (*Id.* ¶ 77). Plaintiff also asserts that her appearance and demeanor should have also alerted staff to her trafficking. She alleges that she was "forced to wear clothing that was tattered, inappropriate for the weather, sexually suggestive, and inappropriate for her and age the circumstances"; that she "appeared malnourished and sleep deprived"; that she "had visible bruises"; and that she showed "signs of fear and anxiety" and "disorientation and impairment" as she was "kept in a drugged state by her traffickers." (*Id.* ¶ 78). According to Plaintiff, hotel staff observed the "constant and heavy foot traffic" in and out of her room "involving men who were not hotel guests" and who "entered and left her room at unusual times and stayed for brief periods." (*Id.* ¶ 78). She also alleges that she was "frequently yelled at by her trafficker in a way that could be heard by customers and staff"; that she was required by her traffickers "to order excessive additional towels and sheets at varying times of the day or night"; that she was "confined to her room for excessively long periods without leaving"; and that the "Do Not Disturb" sign was kept on her door "an unusual amount." (*Id.* ¶ 80). When hotel staff would enter her room, Plaintiff notes they found it "littered with used condoms and other sex paraphernalia" as well as "obvious signs of illegal drug use . . . ." (*Id.*).

Plaintiff's complaint, filed on April 15, 2024, asserts claims under the TVPRA against RRI Brand Defendants and Varahi for perpetrator liability, beneficiary liability, and vicarious liability. (ECF No. 1 ¶¶ 111–131). On July 15, 2024, each of the RRI Brand Defendants filed an answer (ECF Nos. 18, 19, 20, 21) and moved for judgment on the pleadings. (ECF Nos. 23, 24, 25, 26).

On August 5, 2024, Plaintiff opposed the motions for judgment on the pleadings in a single brief. (ECF No. 28). On September 9, 2024, RRF Holding, RRI West, and RRI jointly replied (ECF No. 38), while RRF filed a separate reply (ECF No. 39). RRI Brand Defendants' motions are now ripe for review.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as motions to dismiss under Rule 12(b)(6). *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1031 (S.D. Ohio 2016) (citing *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010)), *aff'd*, 714 F. App'x 565 (6th Cir. 2017).

To withstand a motion for judgment on the pleadings, the complaint "must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir.2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). When ruling on a Rule 12(c) motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (citation omitted). A court, however, need not accept as true "legal conclusion[s] couched as a factual allegation[s]," and mere recitations of the elements of a cause of action are insufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In resolving a Rule 12(c) motion, a court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. *See Roe*, 170 F. Supp. 3d at 1031 (citing Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the

complaint and the answer); Fed. R. Civ. P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes")). A motion for judgment on the pleadings is granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan*, 510 F.3d at 581–82 (citation omitted).

## III.    LAW & ANALYSIS

Although this Court has extensively analyzed the civil liability of hotel defendants in TVPRA sex trafficking cases, *see S.R.*, 2024 WL 3226126, at *2 (collecting cases), it has not yet had occasion to consider the question in the context of a Rule 12(c) motion. But as explained above, a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim is assessed under largely the same standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).

In her complaint, Plaintiff charges RRI Brand Defendants and Varahi with violations of the TVPRA's civil provision, which provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). As the statutory text makes clear, Section 1595 creates two kinds of civil liability: perpetrator liability and beneficiary (or participant) liability. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552–53 (7th Cir. 2023). To establish a "violation of this chapter" under Section 1595(a), sex trafficking victims look to 18 U.S.C. § 1591, the provision of the TVPRA that sets forth criminal penalties for sex trafficking. Section 1591 provides:24-1780

> (a) Whoever knowingly—

5

(1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

The thrust of RRI Brand Defendants' argument is that they cannot be held liable under the TVPRA because Varahi, as an independent franchisee, owned, operated, and controlled the Smyrna RRI. (*Id.*). RRI Brand Defendants move for judgment on the pleadings arguing that Plaintiff's allegations cannot state a perpetrator or beneficiary claim under the TVPRA. RRI Brand Defendants also reject Plaintiff's theory of vicarious liability; RRI, RRI West, and RRF Holding assert that they "had no relationship with Varahi or any hotel employee, let alone one sufficient to establish agency as a matter of law." (ECF No. 23 at 2; ECF No. 24 at 2; ECF No. 26 at 2). RRF, on the other hand, argues that its "franchisor-franchisee relationship with Varahi is not enough standing on its own to establish agency as a matter of law." (ECF No. 25 at 2). This Court first examines the sufficiency of Plaintiff's allegations to support RRI Brand Defendants' direct liability under both a perpetrator theory and beneficiary theory of the TVPRA, and then their indirect or vicarious liability for TVPRA violations.

## A.  Direct Liability

As a threshold consideration, this Court notes that a civil claim under Section 1595(a) can be a standalone claim, and defendants need not have committed the underlying criminal sex trafficking offense under Section 1591 for a plaintiff to maintain an action under Section 1595(a). *See M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *G.G.*, 76 F.4th at 553 n.4 ("Courts unanimously agree that a civil defendant under Section 1595 need not have violated Section 1591.") Additionally, Plaintiff's allegation that she is "a victim of sex trafficking within the meaning of § 1591" (ECF No. 1 ¶ 9) is sufficient, at the pleading stage, to establish that she is a "victim of a violation of this chapter" under 18 U.S.C. § 1595(a).

### 1.  Perpetrator Liability

Plaintiff first asserts that RRI Brand Defendants are liable as "perpetrators" of 18 U.S.C §1591(a) violations. (ECF No. 1 ¶¶ 113–14). To survive a motion for judgment on the pleadings on this claim, the Complaint must plausibly allege that RRI Brand Defendants knowingly and in interstate or foreign commerce either: (a) recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited  a person; or (b) benefitted from knowingly assisting, supporting, or facilitating, the recruiting, enticing, harboring, transporting, providing, obtaining, maintaining, patronizing, or soliciting of a person. 18 U.S.C. § 1591. Plaintiff must also plead sufficient facts to establish that RRI Brand Defendants *knew* "that means of force, threats of force, fraud . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591. As this Court recognized in *M.A.*, Section 1591's knowledge standard is much higher than the "should have known" standard required for beneficiary liability. *M.A.*, 425 F. Supp. 3d at 966; *see also Acevedo v. Exp. Realty, LLC*, 713 F. Supp. 3d 740, 764–65 (C.D. Cal. 2024).

7

RRI Brand Defendants argue that Plaintiff's allegations fail to show that RRI Brand Defendants "perpetrated" Plaintiff's sex trafficking, "let alone had actual knowledge of the same." (ECF No. 23 at 2; ECF No. 24 at 2; ECF No. 25 at 2; ECF No. 26 at 2). Plaintiff retorts that her allegations "support an inference that hotel staff and management had actual knowledge of, or at least were willfully blind to the trafficking at the Smyrna RRI and yet participated in harboring her and facilitating her trafficking." (ECF No. 28 n. 19 (citing ECF No. 1 ¶¶ 76–77, 82–85)). The allegations Plaintiff points to, however, discuss "obvious and apparent signs of trafficking" that hotel staff must have observed when interacting with Plaintiff and "the risks, known to them, of human trafficking." (*See* ECF No. 1 ¶¶ 76–82). These facts, taken as true, are still not enough to support an inference of actual knowledge. *See M.A.*, 425 F. Supp. 3d at 967–68 (holding that plaintiff's allegations "that the front desk staff saw her with her trafficker"; observed "that the trafficker paid for the room in cash"; and that hotel staff "ignored" her screams for help could not establish actual knowledge).

Plaintiff's argument to the contrary misses the mark. She contends that RRI Brand Defendants' "familiar[ity]" with the population of traffickers at the hotel and "implicit[] encourage[ment]" of their illegal activities constitute "harboring under § 1591(a)(1) and knowing facilitation of a trafficking venture under § 1591(a)(2) consistent with a criminal violation." (ECF No. 28 n. 19). She cites several cases in support of her position, but those cases are distinguishable.

RRI Brand Defendants argue that the Complaint fails to allege that they had "actual knowledge" of S.S.'s trafficking. Plaintiff retorts that her allegations "support an inference that hotel staff and management had actual knowledge of, or at least were willfully blind to the trafficking at the Subject RRIs and yet participated in harboring her and facilitating her

trafficking." (ECF No. 30 at 15 n. 23) (citing ECF No. 1 ¶¶ 76–77, 82–85). She cites several cases in support of her position, but those cases are distinguishable.

In *Canosa v. Ziff*, for example, the court held that the plaintiff sufficiently alleged that Harvey Weinstein's "TWC Companies" violated 18 U.S.C. § 1591 by "actively participat[ing] in the recruitment and enticement of women, knowing that those women would—or would likely— be coerced by Weinstein into engaging in what amounted to a commercial sex act with him." No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *23 (S.D.N.Y. Jan. 28, 2019). There, the complaint alleged that "the TWC Companies maintained women on their payroll whose responsibilities including introducing Weinstein to young women and covering up his assaults"; "the TWC Companies knew that Weinstein's recurrent practice—indeed, pattern—was to lure women like Canosa into pretextual meetings and then subject them to forced sexual acts[] [but] . . . nevertheless continued to pay for and facilitate Weinstein's interstate and foreign travel, on which trips some assaults, including of [Plaintiff], occurred"; "employees of the TWC Companies gave Weinstein the medications he required to perform sexual acts and cleaned up after his sexual assaults"; and "the TWC Companies expressly or tacitly linked tangible job benefits to the commission of the forced sexual advances and sexual assaults aforesaid." *Id.* The facts alleged in *Canosa* therefore directly link the entities and the trafficker in a way that Plaintiff's allegations do not here.

Likewise, in *United States v. Bhimani*, No. CR 3:17-324, 2021 WL 5179196 (M.D. Pa. Nov. 8, 2021), the court upheld the criminal liability of a motel owner and its general manager under the TVPRA based on "ample evidence" showing that the general manager "knowingly rented rooms to drug and sex traffickers, gave discounts, hired drug dealers and users to work at the hotel, did not fire them once they learned about drug activity, allowed criminal guests to check in under assumed names, allowed guests to check in without showing

identification, refrained from kicking guests out despite disruptive, criminal behavior, and allowed criminals to stay and work out of their room and pay the room rate with the proceeds." *Id.* at *9. Although Plaintiff here alleges that RRI Brand Defendants and hotel staff were "willfully blind" to her sex trafficking, she fails to allege sufficient facts to support such an inference or other facts that resemble the circumstances in *Bhimani*. The case is of even less import, given that it was a criminal case and the facts there were considered under a different procedural posture.

Finally, *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) does not compel a different conclusion. There, the First Circuit reversed the dismissal of a TVPRA claim against motel operators and a motel owner where the complaint alleged that the motel operators had prior commercial dealings with the trafficker and intended to reinstate these dealings for profit "in circumstances in which [the trafficker's] coercive and abusive treatment of [the victim] as a sex slave had become apparent" to the motel operators. *Id.* at 555. The allegations in *Ricchio* included a "high-five" while discussing "getting this thing going again," a past business relationship between the trafficker and hotel owner, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to Ricchio's obvious physical deterioration." *Id.* Ricchio alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* Although Plaintiff contends that RRI Brand Defendants' "familiar[ity]" with the population of traffickers at the hotel and "implicit[] encourage[ment]" of their illegal activities constitute "harboring . . . and knowing facilitation" (ECF No. 30 at 22 n. 19), her allegations "do not rise to the level of obviousness present in *Ricchio*." *See M.A.*, 425 F. Supp. 3d at 966. Nor do the facts alleged "suggest a direct agreement between her trafficker and any of the hotel defendants," or "that a specific hotel staff member saw her in a deteriorated state." *Id.*

In addition to being less overt, Plaintiff's allegations here hew more closely to legal conclusions than factual allegations. *See e.g.*, ECF No. 1 ¶ 116 ("Despite the fact that Defendants knew or should have known that Jane Doe (S.S.) was being sex trafficked in violation of the TVPRA . . . ."). Because this Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 679 (legal conclusions "must be supported by factual allegations"), the bare contention that RRI Brand Defendants *actually knew* that Plaintiff was being trafficked, without more, is insufficient.

Absent any facts to suggest that RRI Brand Defendants possessed actual knowledge of S.S.'s trafficking, Plaintiff's perpetrator claim fails as a matter of law. Accordingly, this Court **GRANTS IN PART** the motions for judgment on the pleadings (ECF Nos. 23, 24, 25, 26) with respect to Plaintiff's perpetrator liability claim and **DISMISSES** that claim against RRI Brand Defendants.

### 2. Beneficiary Liability

Plaintiff's claim under the TVPRA's beneficiary theory of liability, which does not require actual knowledge, fares better. To survive a Rule 12(c) on this claim, the Complaint must plausibly allege that: (1) RRI Brand Defendants "knowingly benefitted, financially or by receiving anything of value"; (2) from participating in a venture; (3) that they "knew or should have known [] engaged in an act in violation of [the TVPRA]." § 1595(a). As this Court noted in *Doe*, "a plaintiff may satisfy these elements by showing that 'defendant's own acts, omissions, and state of mind establish each element.'" *See Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at *4 (S.D. Ohio Aug. 12, 2024) (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021)).

RRI Brand Defendants argue that the Complaint fails to allege that they "[p]articipated in a venture with Plaintiff's alleged trafficker"; that they had actual or constructive knowledge that "Varahi was allegedly renting rooms to Plaintiff's alleged trafficker"; or that they "knowingly benefitted from participating in a venture that committed sex trafficking as to Plaintiff." (ECF No. 23 at 2; ECF No. 24 at 2; ECF No. 25 at 2; ECF No. 26 at 2).

### a.   "Knowing Benefit

The "knowing benefit" element merely requires that RRI Brand Defendants knowingly receive a financial benefit, not that RRI Brand Defendants have actual knowledge of an illicit venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *accord H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowing benefit element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding that the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach").

Because Plaintiff alleges that RRI Brand Defendants rented rooms to her traffickers and benefited financially from those rentals (ECF No. 1 ¶¶ 85, 108, 119), Plaintiff's allegations are enough to satisfy the element of "knowing benefit" under Section 1595(a).

### b.   "Participated in a venture"

Plaintiff has also alleged sufficient facts to establish that Defendants' conduct constitutes "participation in a venture" under Section 1595(a). As this Court held in *M.A.*, Defendants need

not have actual knowledge of the sex trafficking or perform an overt act to have "participated" in a sex trafficking venture for TVPRA liability to attach, "otherwise the 'should have known' language in § 1595(a) would be meaningless." 425 F. Supp. 3d at 971; *see also G.G.*, 76 F.4th 544 (participation under TVPRA's civil remedy provision does not require direct participation, criminal violation of TVPRA, or actual knowledge of criminal wrongdoing); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937 (D. Or. 2020) (agreeing with this Court's reasoning in *M.A.* that a plaintiff is "not required to allege actual knowledge of a sex trafficking venture or the performance of an overt act in order to sufficiently plead the 'participation in a venture' element of her § 1595 claim").

Plaintiff, however, "must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *See M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)). S.S.'s allegations here—that RRI Brand Defendants were received financial benefits by renting rooms to Plaintiff's traffickers—satisfies the "participation in a venture" element. (*See* ECF No. 1 ¶ 119).

Resisting this conclusion, RRI Brand Defendants argue that "[l]egitimate and routine commercial operations cannot constitute participation in a venture that violates the TVPRA." (*See e.g.*, ECF No. 23 at 7). In support, they cite the Eleventh Circuit's decisions in *Doe #1 v. Red Roof Inns, Inc.*, 21 F. 4th 714 (11th Cir. 2021) and *K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024). In *Doe # 1*, the Eleventh Circuit held that the Section 1595(a) beneficiary claims against hotel franchisors failed because the plaintiffs "provided no plausible allegations that the franchisors took part in the common undertaking of *sex trafficking*." *Doe #1*, 21 F. 4th at 721

13

(emphasis added). According to the Eleventh Circuit, the Does' allegations "that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels" were insufficient because "observing something is not the same as participating in it." *Id. Riti* likewise rejected a similar claim, reiterating that "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a *sex trafficking* venture and observing signs of sex trafficking is not the same as participating in it." *Riti*, 2024 WL 505063, at *4 (emphasis added).

But both *Doe* and *Riti* analyzed the plaintiffs' claims that defendants participated in a *sex-trafficking* venture, not a commercial venture, which S.S. pleads here. (*See* ECF No. 1 ¶ 109 (explaining that "RRI Brand Defendants also knowingly received a financial benefit by engaging in a venture with Varahi Hotel, LLC"). In *Doe #1*, the Eleventh Circuit recognized that its analysis may have been different if the plaintiffs had pled the hotel franchisor defendants had participated in commercial ventures operating the hotel rather than alleging that they only participated in sex-trafficking ventures. 21 F.4th at 727. The *Doe #1* plaintiffs, however, had not done so and had refused an opportunity to amend. *Id.* Thus, neither *Doe #1* nor *Riti* applies to the commercial ventures inferred from Plaintiff's factual allegations. *See C.T.*, 2023 WL 3510879, at *4 ("Since this case finds itself in waters the Eleventh Circuit declined to wade in, *Doe #1* is not determinative."); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054, at *7 (S.D. Ohio Dec. 16, 2022) (because plaintiff "alleges that Defendant 'participated in a commercial business venture under § 1595[ ] by receiving royalties from Plaintiff's traffickers renting rooms at their branded locations,'" the Eleventh Circuit's decision in *Doe # 1* "is not controlling"). Indeed, the Eleventh and Seventh Circuits have recognized that the relevant "venture" under Section 1595 need not be "specifically a sex trafficking venture" and can instead

14

be a "commercial venture" like running or expanding a business that facilitates sex trafficking. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (citing *Doe #1*, 21 F.4th at 727).

Plaintiff's allegations raise a plausible inference that RRI Brand Defendants participated in hotel-operating commercial ventures that rented rooms to people that RRI Brand Defendants should have known were engaged in sex trafficking. (*See e.g.*, ECF No. 1 ¶ 107 (noting that "there is a high degree of interrelation of operations and profit sharing" between RRI Brand Defendants and Varahi); *id.* ¶ 119 ("RRI Brand Defendants received benefits in the way of management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the [RRI Smyrna].")). The Complaint therefore satisfies the "participation in a venture" requirement. *See M.A.*, 425 F. Supp. 3d at 968 (defendant who continues an ongoing business relationship with traffickers, including by continuing to rent rooms to them, after the defendant should know that the business relationship facilitates trafficking, participates in a §1595(a) venture); *A.R.*, 2022 WL 17741054, at *7 (recognizing defendant's "business venture with the franchisee hotels" as sufficient to show participation in a venture under Section 1595); *T.P.*, 2022 WL 17363234, at *11 (recognizing this theory of venture).

### c.  *"Knew or should have known" that the venture violated the TVPRA*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Unlike a perpetrator claim, RRI Brand Defendants need not have actual knowledge of trafficking crimes for beneficiary liability to attach, as the "should have known" language in Section 1595(a) permits constructive knowledge. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89).

RRI Brand Defendants' arguments that Plaintiff fails to satisfy this element are multi-fold. First, they argue that any signs allegedly observed by Smyrna RRI employees—e.g., Plaintiff's

traffickers using prepaid cards; condoms or lubricant left in the hotel rooms after check-out; heavy foot traffic in and out of Plaintiff's room; and Plaintiff dressing provocatively—do not "plausibly suggest that Varahi knew or should have known Plaintiff was allegedly being trafficked[,] let alone [RRI Brand Defendants]." (ECF No. 23 at 9–10; ECF No. 24 at 10; ECF No. 25 at 9; ECF No. 26 at 9). "At most," RRI Brand Defendants contend, these are "signs of prostitution, not sex trafficking." (ECF No. 23 at 10 n. 3; ECF No. 24 at 10 n. 3; ECF No. 25 at 9 n.3; ECF No. 26 at 9 n. 3). Second, they argue that Plaintiff has not alleged that any of the RRI Brand entities' employees, as opposed to Smyrna RRI hotel staff, observed any of the alleged red flags. (ECF No. 23 at 10; ECF No. 24 at 10; ECF No. 25 at 10; ECF No. 26 at 10). Third, RRI Brand Defendants emphasize that "[b]road allegations of sex trafficking in the hotel industry do not allege that [RRI Brand Defendants] had knowledge that *this Plaintiff* was subject to trafficking at a particular hotel." (ECF No. 23 at 11; ECF No. 24 at 11; ECF No. 25 at 10; ECF No. 26 at 11). Finally, according to RRI Brand Defendants, Plaintiff cannot establish constructive knowledge "by listing customer reviews and news articles about various Red Roof branded properties not at issue here." (ECF No. 23 at 11; ECF No. 24 at 11; ECF No. 25 at 11; ECF No. 26 at 11).

RRI Brand Defendants' reading of the Complaint misses key factual allegations. For one, in addition to the signs RRI Brand Defendants reference, Plaintiff alleges that hotel staff observed effects on her appearance and demeanor from the coercion she was being subjected to, including visible bruising, signs of fear and anxiety, being yelled at by her trafficker in a manner audible to customers and staff. (ECF No. 1 ¶ 78). These allegations take Plaintiff's claim outside what might constitute consensual commercial sex acts, and into the coerced sex trafficking territory prohibited by the TVPRA. For this reason, and as explained below, the cases on which RRI Brand Defendants rely are inapposite. (*See e.g.*, ECF No. 25 at 10–11 n. 3).

In *J.B. v. G6 Hosp.,* for example, the plaintiff described instances when she was either in a car in the parking lot or in rented rooms to argue that motel staff "should have been aware" that she was being trafficked. No. 19-CV-07848-HSG, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20, 2020) (emphasis added). The plaintiff, however, had noted that the car windows were covered up and "never allege[d] that she saw or approached employees with or without her trafficker." (*Id.*). Finding the allegations insufficient, the court contrasted the case with *M.A.*, where a sex trafficking victim alleged that she had "visible physical changes, such as bruising, . . . and that [d]espite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her . . . ." *M.A.*, 425 F. Supp. 3d at 962. Although a plaintiff need not allege facts as egregious as *M.A.* to state a claim, the court in *J.B.* noted that "allegations that the victim sought help and was seen by employees with physical injuries or other facts suggesting coercion allow courts to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution." *J.B.*, 2020 WL 4901196, at *10.

Likewise, in *A.B. v. Hilton Worldwide Holdings Inc.*, the court acknowledged that "factual allegations listing indicia of trafficking (i.e., condition of the hotel room, frequent male visitors) may support a theory that a hotel where Plaintiff was trafficked knew or should have known of Plaintiff's trafficking." 484 F. Supp. 3d at 938–39. The plaintiff there though "merely allege[d] that she repeatedly 'encountered' the same hotel staff who paid no attention to her"; she did not allege "she had prominent bruises, brandings, or other visible injuries." *Id*. at 941. The court therefore concluded that the allegations could not show that the hotels should have known that plaintiff's commercial sex acts were a result of fraud, force, or coercion. *Id*. at 941.

17

Unlike the allegations in those cases, the facts pled here support a plausible inference that hotel staff should have known that Plaintiff was being coerced into commercial sex acts. Even if the knowledge of on-the-ground hotel staff cannot be imputed to RRI Brand Defendants, Plaintiff's allegations that RRI Brand Defendants—through on-site employees, surveillance footage, inspections of the hotel property, and monitoring of online reviews (ECF No. 1 ¶¶ 68, 72)—should have known that Plaintiff was being sex trafficked are enough to survive a Rule 12(c) motion.

As this Court has previously held, a hotel defendant's notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" satisfy the constructive knowledge requirement at the pleading stage. *M.A.*, 425 F. Supp. 3d at 968. In comparable environments, this Court has also rejected arguments that hotel defendants "must have had knowledge or constructive knowledge with respect to Plaintiff specifically and that a generalized awareness of sex trafficking in its low-cost hotels is insufficient." *See T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 798–99 (S.D. Ohio 2024) (explaining that "the express terms of [18 U.S.C. § 1595] impose liability for benefiting from a venture that the Defendant knew or should have known was engaged in violations of § 1591, not violations of § 1591 with respect to a particular person."); *Doe (R.A.) v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3850958, at *7 (S.D. Ohio Aug. 16, 2024) ("Plaintiffs need not allege that Defendant had knowledge or constructive knowledge with respect to Plaintiff *specifically*.").

Taken together, Plaintiff's allegations raise a plausible inference that RRI Brand Defendants "should have known" about the nature of the venture. And while, ultimately, these allegations may be unsubstantiated on a fuller record, they satisfy the three-pronged requirement of 18 U.S.C. § 1595 to survive a motion to dismiss and, hence, a motion for judgment on the

18

pleadings. *See Roe*, 170 F. Supp. 3d at 1031 ("Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)."); *M.A.,* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections); *T.D.P.*, 725 F. Supp. 3d at 798–99.

### B.  Indirect or Vicarious Liability

Plaintiff also asserts that RRI Brand Defendants are vicariously liable for TVPRA violations "because RRI Brand Defendants, together with Varahi Hotel, LLC, acted as the joint employer of [Smyrna RRI] employees because RRI Brand Defendants and Varahi Hotel, LLC jointly controlled the terms and conditions of their employment." (ECF No. 1 ¶ 123; *see also id.* ¶¶ 105–107). RRI Brand Defendants challenge this claim on multiple grounds. First, they argue that Plaintiff's failure to distinguish between the multiple RRI Brand Defendants does not satisfy Federal Rule of Civil Procedure 8(a). (ECF No. 23 at 13–14; ECF No. 24 at 13–14; ECF No. 25 at 13; ECF No. 26 at 13–14). RRI Brand Defendants also argue that they "employed no one at RRI Smyrna in 2017," and had no agency relationship, actual or apparent, with Varahi. (ECF No. 23 at 14; ECF No. 24 at 14; ECF No. 25 at 13–14; ECF No. 26 at 14). Finally, RRI Brand Defendants maintain that "Plaintiff has failed to allege a basis for [vicarious] liability with facts supporting a plausible inference that the RRI Smyrna hotel employees are liable under the TVPRA." (ECF No. 23 at 16; ECF No. 24 at 16; ECF No. 25 at 16; ECF No. 26 at 16).

#### 1.  Group Pleading

RRI Brand Defendants object to Plaintiff's "group pleading," i.e., the practice of attempting to attribute wrongdoing to a group of defendants without differentiating which defendant was

involved in the unlawful conduct. They argue that such allegations fail to provide them with adequate notice as to the claims against each of them.

As this Court has observed, group pleading has generally been found improper in cases involving fraud, which apply Fed. R. Civ. P. 9(b)'s specificity requirements; or cases asserting violations of securities laws or regulations, which likewise utilize heightened pleading standards.[2] *See M.A.*, 425 F. Supp. 3d at 973. *A.R.*, 2022 WL 17741054, at *11. Since none of those heightened requirements applies here, however, Rule 8's more liberal pleading standards govern. To satisfy Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although Plaintiff refers to RRI Brand Defendants collectively, her allegations are enough to put them on notice of "what the claim is and the ground upon which it rests." *Twombly*, 550 U.S. at 555. To begin with, the interrelatedness of RRI Brand entities support treating them as an "integrated enterprise" or "joint employer." *Cf. Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997). Plaintiff, for example, alleges that RRI Brand Defendants share

---

[2] Courts have also rejected group pleading in the 42 U.S.C. § 1983 context, reasoning that liability under § 1983 arises only upon a showing of personal participation by the defendant. *See Harris v. City of Akron*, No. 5:23-CV-01290, 2024 WL 97342, at *4 n. 47 (N.D. Ohio Jan. 9, 2024) ("Courts in the Sixth Circuit disfavor [] 'group pleading' to establish 42 U.S.C. § 1983 liability." (citing *Robertson v. Univ. of Akron Sch. of Law*, Case No. 5:20-cv-1907, 2021 WL 3709915, at *6-7 (N.D. Ohio Aug 20, 2021) (collecting cases))); *Wood v. Washburn*, No. 23-35041, 2025 WL 66046, at *2 (9th Cir. Jan. 10, 2025). *But see Kesterson v. Moritsugu*, 149 F.3d 1183 (6th Cir. 1998) (noting "the Supreme Court's displeasure with lower courts placing heightened burdens on civil rights plaintiffs in the absence of any support in the rules or statutes for so doing. As the *Leatherman* court reasoned, such a heightened pleading requirement is incompatible with the notice pleading requirement of Rule 8(a)(2)." (citing *Leatherman v. Tarrant County Narcotics Intel. and Coordination Unit*, 507 U.S. 163 (1993)).

corporate offices; "signed agreements with one another related to the [Smyrna RRI]"; "exercised joint control over operations of the [Smyrna RRI]"; "distributed revenue earned from the [Smyrna RRI] among themselves"; and "communicated with one another regarding operation of the [Smyrna RRI]." (ECF No. No. 1 ¶ 22; *see also id.* ¶ 122 ("RRI Brand Defendants shared profits, standardized employee training, standardized and strict rules of operations, and RRI Brand Defendants controlled pricing and reservations, regularly conducted inspections, operational support and control.").

The issue of single or joint employment status, for purposes of TVPRA liability, is also "essentially factual." *Carrier Corp. v. N.L.R.B.*, 768 F.2d 778, 781 (6th Cir. 1985). In light of "the slight variations in name between the entities in question," it is reasonable to conclude that Plaintiff at this juncture "lacks access to information that could further elucidate the specific relationship between these entities." *See Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 422 (S.D.N.Y. 2022). Plaintiff's "group pleading" therefore does not run afoul of Rule 8(a).

### 2. Agency Relationship between RRI Brand Defendants and Varahi

RRI Brand Defendants next argue that Plaintiff does not plausibly plead an agency relationship between RRI Brand Defendants and Varahi and that her "generalized and conclusory allegations relating to 'control' [are] insufficient." (ECF No. 38 at 12).

The Sixth Circuit looks to the Restatement of Agency when applying "federal common law principles of agency." *See Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016). [3] The Restatement defines agency as "the fiduciary relationship that arises when one person

---

[3] As this Court previously outlined, the Sixth Circuit has yet to rule on whether federal or state common law governs vicarious liability claims under the TVPRA. *See T.D.P.*, 725 F. Supp. 3d at 799. While this Court has entertained arguments for both given the nearly identical analysis required under federal and Ohio common law, this Court will proceed under a federal common law analysis of the issue. *See id.* at 799–800 (explaining that "[t]his approach brings the analysis

(a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 1000 (6th Cir. 2009). A principal-agent relationship is therefore "characterized by the presence of two elements": (1) "an indication by the principal that the agent will act on his behalf and subject to his control"; and (2) "a manifestation of consent by the agent so to act." *Auger v. Abb Flexible Automation, Inc.*, 34 F. App'x 160, 164 (6th Cir. 2002). A defining element of agency "is the principal's right to control the agent's actions," particularly, "[t]he power to give interim instructions." Restatement (Third) of Agency § 1.01 cmt. f ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (quoting Restatement (Second) of Agency § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them." (internal quotation marks and citations omitted)). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as

---

in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments").

in the absence of a franchisor-franchisee relationship.'" *Bricker*, 804 F. Supp. 2d at 623 (quoting *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).

RRI Brand Defendants maintain that they lacked sufficient day-to-day control over the Smyrna RRI and its employees to be held vicariously liable for their alleged TVPRA violations. They cite two cases in support of their position. In *Ries v. McDonald's USA, LLC*, No. 1:20-CV-2, 2021 WL 5768436 (W.D. Mich. Dec. 6, 2021), former employees of the franchisee alleged that their manager sexually harassed them in violation of Title VII and sought to hold the franchisor liable under "joint employer" and "apparent agency" theories. Granting summary judgment for the franchisor, the court found "no genuine dispute that [the franchisor] did not meaningfully participate in employment decisions or possess sufficient control over the terms of Plaintiffs' employment to qualify as a joint employer." *Id.* at *5. Rather, the franchisor's control was limited to "'control over conformity to standard operational details inherent in many franchise settings' and 'the power to terminate [the] franchises.'" *Id.* (quoting *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991)). The court also rejected the "apparent agency" theory reasoning that, among other things, the franchisor "could not supervise Franchisee's employees and then discipline them to correct harassing behavior," and there was "scant evidence that Plaintiffs reasonably believed that their manager's harassing actions were within the authority given to him by McDonald's." *Id.* at *6-7.

In the other case, *Broock v. Nutri/System, Inc.,* 654 F. Supp. 7 (S.D. Ohio 1986), the administrator of an estate bought suit on behalf of individual who participated in franchisee's diet program before her death. The court found, that no actual agency relationship existed between the franchisee and franchisor at the time of the individual's death, but that genuine issues of material fact exist as to whether an apparent agency or agency by estoppel relationship existed at that time.

23

In reaching that conclusion, the court relied on deposition testimony from the deceased's husband stating that "Sharon had come to me and said she wanted to . . . *lose some weight and she had read about Nutri/System and it guaranteed you lose so much weight.*" *Id.* at 11 (emphasis original).

Those cases—which had the benefit of a full record developed at summary judgment—do little to help RRI Brand Defendants at this pre-discovery stage. *See Ries*, 2021 WL 5768436, at *5 (distinguishing "cases in which courts denied a franchisor's attempt to dismiss similar claims against it because the franchisor was involved in creating personnel policies or provided training to the franchisee's employees," noting that "[t]he Court is not assessing the allegations in Plaintiffs' complaint.") Given that "the existence of an agency relationship is a question of fact, rather than one of law," this Court's task on a Rule 12(c) motion is to determine whether the pleadings and the attached exhibits present "any conflicting evidence of an agency relationship" between RRI Brand Defendants and Varahi. *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 661 (6th Cir. 2005).

Seeking to dispel the existence of any agency or joint employer relationship, RRI Brand Defendants rely on the franchise agreement between RRF and Varahi. (*See* ECF No. 23 at 15 (citing ECF No. 18-1 § 15.1)).[4] According to RRI Brand Defendants, the contract makes clear "that Varahi owned, operated, and employed individuals at the RRI Smyrna—and no Red Roof

---

[4] Because the franchise agreement is attached to RRF's answer (ECF No. 18-1), it is properly considered on a Rule 12(c) motion. *See Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, 103 F.4th 1186, 1192 (6th Cir. 2024) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered." (alteration in original) (citation omitted)); *Dudek v. Thomas & Thomas Attorneys & Couns. at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) ("When ruling on a Rule 12(c) motion, [the court can] consider all available pleadings and can also consider 'any documents attached to, incorporated by, or referred to in the pleadings.'"); *see also* Fed. R. Civ. P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the complaint and the answer).

entity, was responsible for the conduct of any RRI Smyrna employee." (*Id.*). They point to the section that designates Varahi as an "independent contractor" and states: "[N]othing herein shall . . . be construed to create the relationship of employer and employee, partnership, principal and agent, or joint venture between Franchisor (or its Affiliates) and Franchisee." (ECF No. 18-1 § 15.1).

But "[a]n agency relationship does not require an explicit agreement, contract, or understanding between the parties, . . . and when the facts establish the existence of an agency relationship, it will be found to exist whether the parties intended to create one or not." *Gen. Acquisition, Inc. v. GenCorp Inc.*, 766 F. Supp. 1460, 1471 (S.D. Ohio 1990); *see* Restatement (Third) of Agency § 1.02 (2006) ("Whether a relationship is characterized as agency in an agreement between parties . . . is not controlling."). The parties' contractual disclaimer of a particular legal relationship is thus not dispositive.[5]

---

[5] Indeed, most courts agree that the parties' course of conduct may establish an agency relationship regardless of the label used by the parties to describe their relationship. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 661 (4th Cir. 2019) (noting that, although [t]he terms of the agreement . . . will remain highly relevant to the legal status of the[] [entities'] relationship," "a contractual disclaimer [] alone [is not] dispositive"); *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1359 (Fed. Cir. 2016) ("[I]t is well established that parties' statements in a contract are not dispositive as to the existence of an agency relationship."); *United States v. Milovanovic*, 678 F.3d 713, 725 (9th Cir. 2012) (finding an agency relationship even though the parties' agreements labeled them as independent contractors); *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 523 (2d Cir. 2006) ("Slavish deference to contractual language is inappropriate in the highly-factual and often nuanced agency analysis."); *City of Chicago v. Matchmaker Real Est. Sales Ctr., Inc.*, 982 F.2d 1086, 1097–98 (7th Cir. 1992) (noting that contractual language establishing an "independent contractor" relationship is not enough to preclude finding of agency); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1360 (10th Cir. 1987) ("[T]he terms 'agents' and 'independent contractor' are not necessarily mutually exclusive."); *see also Jackson v. Novastar Mortg., Inc.*, 645 F. Supp. 2d 636, 642 (W.D. Tenn. 2007) ("The parties' characterization in an agreement is not dispositive of the existence of an agency relationship." (citing Restatement (Third) of Agency § 1.02)); *Staton Techiya, LLC v. Samsung Elecs. Co.*, 742 F. Supp. 3d 602, 653 (E.D. Tex. 2024) ("[C]ontractual provisions disclaiming an agency relationship are not dispositive: courts must look

Even on the facts, RRI Brand Defendants falter. In their motions, they describe the scope of RRF's supervision over the Smyrna RRI under the franchise agreement as not "exceed[ing] a simple right to inspect the quality of the operation and of general control over the business practices." (*See* ECF Nos. 23, 24, 25, 26 at 15). This brings the terms of franchise agreement to the fore which, upon review, refute that characterization. Among its provisions, the franchise agreement requires Varahi's managers to "attend and successfully complete to Franchisor's satisfaction, Franchisor's Manager Training Program" to "prepare them to operate, administer, and manage the [Smyrna RRI] in compliance with Franchisor's Standards," (ECF No. 18-1 § 5.6); and Varahi to "participate . . . in any Reservation System maintained or designated by Franchisor for the System and to comply with all terms and conditions of participation," (*id.* § 5.14); to "participate in and comply with the terms of all marketing, reservation service, rate and room inventory management, advertising and operating programs and policies required by Franchisor . . . including, without limitation, any Internet-based or other electronic advertising and marketing conducted and prescribed by Franchisor . . . in the manner directed by Franchisor," (*id.* § 5.16); to maintain records "in the form and manner prescribed by Franchisor" that show "the results of operation of the Inn"; and to install equipment and follow "procedures as Franchisor may require" for the purpose of "permit[ting] Franchisor to access each night during the term of this Franchise Agreement, from Franchisee's Computer System, information on the occupancy, average daily room rate, rooms sold, Gross Room Revenue, and such other data and information attributable to the Inn as Franchisor may require," (*id.* § 9.1).

---

to the accompanying circumstances regarding the relationship between the parties to determine whether a principal-agent relationship exists." (citation and internal quotation marks omitted)), *appeal dismissed*, No. 2024-1917, 2024 WL 5181582 (Fed. Cir. Dec. 20, 2024).

These provisions undermine RRI Brand Defendants' argument that they were "not involved with RRI Smyrna's operation" and raise a material issue of fact as to the extent of their day-to-day control over Smyrna RRI's operations, including their employment decisions. *See A.R.,* 2022 WL 17741054, at *11 (allegations that franchisor hotel "promulgate[s] policies relating to training employees" support inference that "Defendant had significant control over hotel franchisee employees because it set the standards by which the hotel employees are expected to operate on a daily basis").

Besides alleging sufficient facts consistent with the franchise agreement that support an agency or joint employer relationship (*see* ECF No. 1 ¶¶ 91, 101), Plaintiff's allegations likewise support the inference that Varahi and their staff are plausibly liable under Section 1595(a). RRI Brand Defendants are correct that for vicarious liability to attach, the hotel franchisee itself must have committed a TVPRA violation through: (1) "knowingly benefit[ting], financially or by receiving anything of value"; (2) from participating in a venture; (3) that they "should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

First, Plaintiff alleges that Franchisee rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 1 ¶ 108). As explained in Section III.A.2.a *supra*, the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to satisfy the "knowing benefit" element. Second, Plaintiff's allegations raise a plausible inference that Varahi, along with RRI Brand Defendants, participated in a hotel-operating commercial venture that profited from Plaintiff's sex trafficking. (ECF No. 1 ¶ 109). Finally, the Complaint plausibly alleges that Franchisee had constructive knowledge that Plaintiff was being trafficked by observing red flags consistent with sex trafficking, including Plaintiff's bruising and emotional demeanor. (*See e.g.*, *id.* ¶ 78).

Accordingly, Plaintiff's allegations satisfy the three-pronged test established by 18 U.S.C. § 1595 to state a TVPRA claim against Varahi.

RRI Brand Defendants' motions for judgment on the pleadings (ECF Nos. 23, 24, 25, 26) are therefore **GRANTED IN PART** to the extent that RRI Brand Defendants seek dismissal of Plaintiff's perpetrator claims. Plaintiff's perpetrator liability claim against RRI Brand Defendants is **DISMISSED**. RRI Brand Defendants' motions for judgment on the pleadings (ECF Nos. 23, 24, 25, 26) are **DENIED** in all other respects.

## IV. CONCLUSION

For the reasons explained above, RRI Brand Defendants' motions for judgment on the pleadings (ECF Nos. 23, 24, 25, 26) are **GRANTED IN PART** to the extent that RRI Brand Defendants seek dismissal of Plaintiff's perpetrator claims. Plaintiff's perpetrator liability claim against RRI Brand Defendants is **DISMISSED**. RRI Brand Defendants' motions for judgment on the pleadings (ECF Nos. 23, 24, 25, 26) are **DENIED** in all other respects.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: March 6, 2025**

28